UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO.:

LOIS WEAVER, an individual,

    Plaintiff,

v.

LIGHTHOUSE POINT AUTO INVESTORS
I, LLC, a Florida limited liability company,
d/b/a "Phil Smith Kia,"

    Defendant.
_____/

## COMPLAINT FOR DAMAGES AND INCIDENTAL RELIEF

Plaintiff, LOIS WEAVER, an individual, sues Defendant, LIGHTHOUSE POINT AUTO INVESTORS, I, LLC, a Florida limited liability company doing business as "Phil Smith Kia," and alleges:

## INTRODUCTION

1. This lawsuit involves a dealership forcing a senior to pay "junk fees" to exercise her contractual right to buy her leased car at the end of a lease.

2. The Defendant is not alone in its lawbreaking as many car dealers have helped themselves to unlawful fees in the wake of the recent pandemic. The National Automobile Dealers Association ("NADA") recently warned its members:

> The current new and used automotive market is experiencing a "perfect storm" of unprecedented conditions. Extremely limited new vehicle supply and historically high used car prices, coupled with strong consumer demand, have created an environment where retail prices for new vehicles are at historic highs. Many dealer questions have arisen regarding potential regulatory pitfalls raised by these market conditions…[1]

---

[1] NADA Memorandum, "*Select Compliance Issues That May Arise Under Current Market Conditions.*"

3. The NADA admonished:

> Another issue that has become more prevalent in the current market relates to the end of a consumer lease. Most leases provide a contractual right for the lessee to purchase the vehicle upon lease termination for a fixed price (the "Lease Purchase Option Price"), and Reg M (the regulation that implements the federal Consumer Leasing Act) generally requires that the Lease Purchase Option Price be honored - inclusive of fees related to the exercise of the purchase option by the consumer. While many leasing companies enlist the assistance of dealers to complete the lease turn-in, **dealers should exercise caution to ensure that the price offered to the lessee for purchase, and any fees the dealer charges to the consumer related to the purchase of the leased vehicle (or the turn-in of that vehicle), are consistent with both Reg M and the contractual provisions under the lease.**
>
> (emphasis added)[2]

4. The misconduct of the dealership gives rise to claims for *inter alia* violation of the Consumer Leasing Act, 15 U.S.C. § 1667d(c).

## JURISDICTION AND VENUE

5. The Court has federal question jurisdiction under 28 U.S.C. § 1331 because the claim arises from the CLA, a federal statute. 15 U.S.C. § 1667d(c).

6. Venue is proper before this Court because the acts and transactions giving rise to Plaintiff's action occurred in this district, Plaintiff resides in this district, and Defendant transacts business in this district.

## PARTIES

7. At all times material hereto, Plaintiff, Lois Weaver ("Ms. Weaver") was *sui juris* and a resident of Broward County, Florida.

8. At all times material hereto, Ms. Weaver was a 75-year-old woman who was a "senior citizen" as that term is defined under Fla. Stat.§501.2077 (1)(e).

9. At all times material hereto, Defendant, Lighthouse Point Auto Investors I, LLC ("Dealership"), was a Florida limited liability company doing business as "Phil Smith Kia" at 4250

---

[2] *Id.*

N. Federal Highway, Lighthouse Point, Florida 33064.

## FACTUAL ALLEGATIONS

10. On May 3, 2019, the Dealership leased a new 2019 Kia Soul ("Vehicle") to Ms. Weaver for her personal, family, or household purposes.

11. A true and correct copy of the Lease is attached hereto as Exhibit "A."

12. The lease transaction between the respective parties for the Vehicle was a consumer lease of personal property within the meaning of 15 U.S.C. § 1667(1) and (4).

13. The Vehicle was leased for thirty-six (36) months under the Lease.

14. Sections 9 and 23 of the Lease provided Ms. Weaver with the option to buy the Vehicle at the end of the lease term for the so-called "residual value":

> **9. PURCHASE OPTION AT END OF LEASE TERM**
>
> You have an option to purchase the Vehicle from us at the scheduled end of the Lease Term, **AS IS, WHERE IS,** from us or a party we designate (See Section 23), for the Residual Value on line 7D above ("Purchase Price") plus a **Purchase Option Fee of $** ___0.00___. You are also responsible for any official fees, such as those for taxes, tags, license and registration. Please see Section 23 on the back of this Lease for additional terms and conditions.

> **23. PURCHASE OPTIONS AND VEHICLE RETURN**
>
> A. **PURCHASE OPTION AT MATURITY.** At the Scheduled Maturity Date, you may purchase the Vehicle under the conditions and for the amount set forth in Section 9, if you are not in Default.
>
> B. **PURCHASE OPTION BEFORE MATURITY.** You have an option to purchase the Vehicle at any time before the Scheduled Maturity Date if you are not in Default, under the terms and conditions in Section 9, except that the Purchase Price will be the Adjusted Lease Balance figured according to Section 22D, above.
>
> C. **ADDITIONAL PURCHASE OPTION CONDITIONS.** You may not transfer or assign your purchase option to any other party without Assignee's prior written permission. If you reside in a state that requires a seller to have a motor vehicle dealer license to sell used vehicles, you must purchase the Vehicle from the Lessor (Dealer) or from another authorized, licensed dealer selected by Assignee. Please notify us at least thirty (30) days before you intend to exercise your purchase option so that we may make appropriate arrangements with a licensed dealer, if necessary.
>
> D. **VEHICLE RETURN.** Unless you purchase the Vehicle, you must return it to us or the authorized Kia dealer (or other designee) we designate at the time and place we specify, at your expense, upon termination of this Lease (whether early or at the Scheduled Maturity Date). At that time, you must give us a completed, signed odometer disclosure statement (see Section 24B, below), and a Vehicle condition report if we request one. You must also pay us any amounts you owe under the Lease.
>
> If you fail to return the Vehicle to us, as required above, you will still owe us the Monthly Payments and other amounts that may come due and, if the Vehicle is not returned by the Scheduled Maturity Date, you will owe us an amount equal to the Monthly Payment for each Month or partial month that has elapsed from Scheduled Maturity Date to the date of actual return.
>
> E. **SCHEDULED TERMINATION.** If this Lease is not terminated early and if you do not purchase the Vehicle, this Lease will terminate or end on the Scheduled Maturity Date and you must return the Vehicle (see Section 23D, above). Upon return, you will owe us:
> (1) The Turn-in Fee disclosed in Section 4A; **plus**
> (2) Any amounts owed for excess wear; **plus**
> (3) Any amounts owed for excess mileage; **plus**
> (4) All other amounts that are due or past due under this Lease; **plus**
> (5) Any official fees and taxes due in connection with Lease termination.

("Purchase Option Provision")

Page **3** of **8**

15. Section 7 D of the Lease provided the "residual value":

> **D. Residual Value.** The value of the Vehicle at the end of the Lease used in calculating your Base Monthly Payment............- $ 10,620.50

16. Aside from the official fees charged by the government to transfer title and registration, the Lease did not disclose any other fees or costs to be added to the purchase price for Ms. Weaver to exercise the purchase option at the end of the Lease.

17. Ms. Weaver reasonably relied on these terms, including the purchase price provisions, when agreeing to enter into the Lease.

18. The Lease was assigned to Hyundai Lease Title & Trust ("HLTT").

19. Near the end of the lease term, HLTT communicated instructions to Ms. Weaver on what her options were with the respect to turning in or buying the Vehicle.

20. HLTT directed Ms. Weaver to buy the Vehicle through the Dealership.[3]

21. In May 2022, Ms. Weaver visited the Dealership to buy the Vehicle under the Purchase Option Provision in the Lease that was clearly described in the Lease and pursuant to the instructions of the assignee, HLTT.

22. The Dealership required Ms. Weaver to sign a document entitled "Vehicle Buyers Order" ("Buyers Order") to purchase the Vehicle.

23. A copy of the Buyers Order is attached hereto as Exhibit "B."

24. Through the Buyer's Order, the Dealership required Ms. Weaver to pay the following fees and charges that were not authorized under the Lease:

| | |
|---|---|
| Predelivery service charge- | $999.99 |
| Electronic registration filing fee- | $349.00 |
| Private tag agency fee- | $ 25.00 |

---

[3] The Lease contemplated that Ms. Weaver exercise her right to purchase through the Dealership. *See*, Section 23, C of Lease.

      TOTAL:     $1,373.99

                  ("Faux Purchase Option Fees")

25. The Faux Purchase Option Fees are not "official fees," but are fees from which the Dealership earns a profit. The Buyers Order makes this fact clear:

> **These charges represent costs and profit to the dealer for items such as inspecting, cleaning, and adjusting vehicles, and preparing documents related to the sale. Predelivery service fees are paid to the dealer (not a governmental fee). Charging predelivery service fees do not add or change any warranties provided on the Vehicle.

26. The Dealership never disclosed the Faux Purchase Option Fees in the Lease as part of the Purchase Option Provision.

27. The Dealership's failure to honor the purchase price in the Lease was the cause of needless financial harm to Ms. Weaver and left Ms. Weaver with no choice but to pay the illegal fees that were contrary to the amount stated as the purchase price in the Lease.

## COUNT I - VIOLATION OF THE FEDERAL CONSUMER LEASING ACT, 15 U.S.C. § 1667a

28. This is an action for violation of the Federal Consumer Leasing Act, 15 U.S.C. § 1667a ("CLA"), involving an amount in controversy in excess of $8,000, exclusive of interest, costs and attorney's fees.

29. Ms. Weaver realleges and reaffirms the allegations contained in Paragraphs 1 through 27 above as if set forth hereat in full.

30. At all times material hereto, Ms. Weaver was a natural person who leased the Vehicle primarily for her personal, family and household purposes. 15 U.S.C. § 1667(1)-(2).

31. The CLA governs the disclosures in the Lease because the lease term ran for 36 months and was for less than $58,300. 15 U.S.C. § 1667(1).

32. The Dealership was required to comply with the CLA's disclosure requirements

because it was a "lessor" under the CLA.

33. The Defendant is a large car dealership that has leased, offered, or arranged to lease vehicles more than five times in the preceding calendar year or more than five times in the current calendar year. 15 U.S.C. § 1667(3); Reg. M § 1013.2(h).

34. As described above, Defendant also had substantial involvement in the lease transaction with Plaintiff.

35. Upon information and belief, Defendant financially gains on the resale of the vehicle at the end of the Lease term.

36. The CLA and Regulation M require Defendant to indicate "whether or not the lessee has the option to purchase the leased property and at what price and time." 15 U.S.C.S. § 1667a.

37. The Lease is therefore governed by the disclosure requirements of 15 U.S.C. § 1667a and 12 C.F.R. § 213.4.

38. The disclosure of the purchase option price in the Lease had to be accurate, clear, conspicuous, and complete. 12 CFR § 1013.3(a).

39. Defendant violated 15 U.S.C. § 1667 and 12 CFR § 1013.4(i) by not disclosing in the purchase option price that payment of the Faux Purchase Option Fees was required to exercise the purchase option at the end of the lease.

40. Defendant violated 15 U.S.C. § 1667 and 12 CFR § 1013.4(i) by choosing not to disclose that the purchase option price (with respect to Plaintiff's Lease) was $1,373.99 more than what the Lease required to buy the Vehicle.

41. Defendant also violated 15 U.S.C. § 1667 and 12 CFR § 1013.4(i) by choosing not to disclose to Plaintiff that the purchase option price was more than what the Lease required to buy

the Vehicle.

42. Defendant violated 12 CFR § 1013.3(a) because the purchase option price was unclear, inaccurate, and incomplete.

43. Defendant violated the CLA for refusing to sell the Vehicle to Plaintiff unless she paid the Faux Purchase Option Fees.

44. These omissions were material to Plaintiff's decision to enter the Lease, and Plaintiff detrimentally relied on these material omissions.

45. At a minimum, Plaintiff suffered financial loss in that Plaintiff paid more than what the Lease required to buy the Vehicle.

46. Had Defendant provided an accurate, complete, and clear purchase option price in the Lease, which it was required to do, Plaintiff would have negotiated better terms or declined to lease the Vehicle.

47. Defendant's illegal conduct was the actual and proximate cause of the actual damages suffered by Plaintiff.

48. Pursuant to 15 U.S.C. § 1640, Plaintiff is entitled to recover, and seek, actual and statutory damages from Defendant for violations of the CLA, and reasonable attorney's fees and costs.

**WHEREFORE**, Plaintiff prays for relief and judgment against Defendant as follows:

A. Actual and statutory Damages as provided by law;

C. Pre-judgment and post-judgment interest, as allowed by law;

D. Reasonable attorneys' fees and costs;

E. Injunctive relief requiring Defendant to honor its obligation under its lease agreements to sell leased vehicles for the price identified in the lease agreement; and

F.  Such other and further relief as is just and proper.

## **DEMAND FOR JURY TRIAL**

Plaintiff, Lois Weaver, an individual, pursuant to Rule 38(b), Federal Rules of Civil Procedure, demands a trial by jury of all issues so triable.

*/s/ Robert W. Murphy*
ROBERT W. MURPHY
Florida Bar No. 717223
440 Premier Circle
Suite 440
 Charlottesville, VA 22901
(954) 763-8660
(954) 763-8607 (FAX)
E-mail:rwmurphhy@lawfirmmurphy.com
*Counsel for Plaintiff*